Take your time to get set up. Second case is number 22-11787, Young Israel of Tampa, Inc. v. Hillsborough Area Regional Transit Authority. Mr. Glazer. Good morning. May it please the Court. Zach Glazer on behalf of Hillsborough Area Regional Transit Authority, who goes by Hart, and I will also call them Hart for brevity. Hart was created in 1979 to provide finance and operations of public transit throughout Hillsborough County. It's an area that expands about 1,000 square miles, about the size of Rhode Island. And during the pandemic, I think it was actually October 30, 2020, Young Israel, the appellee and plaintiff in this case, called Hart and wanted to advertise for the first time ever an ice skating event that they were having that they've had for well over a decade. Can I ask you just maybe to kind of like, we're going to cut through the factual and know it. And I think my suspicion is that we'll end up going over time today anyway, but I think we might as well sort of get into it. One of your key complaints here is that the district court didn't conduct a forum analysis, right? Sort of needed to do this thing first. I don't think I quite understand why we shouldn't just consider first the question whether what your client engaged in was in fact viewpoint discrimination, because if it was, then it was. Right? You acknowledge that sort of like legal fact, that if there is viewpoint discrimination, it doesn't matter what the forum is. That's correct, Judge Nissen. We do agree with that. Okay. So maybe at least for just speaking for myself, can we go ahead and talk about whether or not this was in fact viewpoint discrimination? Absolutely, Your Honor. So let me ask you this question first. I mean, I think you've got potentially like a double-barreled problem here. One is this trilogy of Supreme Court cases, Lambs Chapel, Rosenberger, Good News, that together, and maybe especially Rosenberger, suggest, rightly or wrongly, that somehow religion itself is per se, ipso facto, a viewpoint. And so restrictions on religious speech are necessarily viewpoint discriminatory, one. Two, and I'm curious what your response to this is, this policy doesn't say no ads about religious speech. It says no ads promoting a religious faith or organization. So why isn't the promotion piece of this, even if religious speech were only a content category, not a viewpoint category, why doesn't the promotion piece of the policy render it targets pro-religious speech and not anti-religious speech? Thank you, Your Honor. I'll start with your first question. The trilogy, as well as Cornelius, as well as basically every case on this point, talks about, well, you can, as a non-public forum, which is why we kind of talk about the forum analysis, but we're going to skip that, Assuming Hart is a non-public forum, which I'm pretty sure it is. Its buses are a non-public forum. You can have content-based restrictions. You just can't. They have to be reasonable, and they can't be viewpoint discriminatory. We're all in agreement there. In all of these cases, the trilogy, Cornelius, all of them, they all also say that with regards to the viewpoint discrimination, as long as, you know, it's religion as a subject versus religion as a viewpoint, and religion as a subject, in our view, is content. It can be restricted. In all of these cases, talk about that issue, that a non-public forum may reasonably restrict religion if it has safeguards and if it's reasonable and non-viewpoint discriminatory. Well, so here, I worry we're kind of begging the question, because you say, like, in our to kind of dig in and tell me, like, you know, what's your response to the line in Rosenberger that says, I've written down at the bottom of one of my sheets here, the quote, religion may be a vast area of inquiry, but it also provides a specific premise, a perspective, a standpoint from which a variety of subjects may be discussed and considered. It basically, it seems to me to say that religion sort of, in some kind of per se way, is a viewpoint. Right. And I understand that interpretation. However, I disagree that that is the actual holding from any of these cases. All of these cases talk about, they're talking about religion, and they're talking about it's allowed as long as it's not viewpoint discrimination. If it were per se viewpoint discrimination, then we would be done. There would be no need to continue the analysis. There would be no need to talk about the safeguards, the workable objective standards that you can have in order to allow restrictions on religion or politics or anything of that nature. There is an important distinction between subject matter regulations and viewpoint restrictions, which we cannot eradicate. And how would you... Oh, go ahead, please. I've been saying enough. You go ahead. Can I ask, I'm going to ask the same hypothetical to your colleagues on the other side, but I'll flip it a little bit for them. If you have a policy that allows a certain type of advertisement, okay, let's say job advertisements, and Hart says, we'll take your ads for jobs. You want to advertise, you have open positions, we'll let you put it up as an ad on our vehicles, right? Can you then apply the policy at issue here to prevent a church or a mosque or a temple from putting up an ad for jobs? No, Your Honor, and thank you for that question, Judge George, because it helps explain my point a little better than I think I was doing. Because the content, the subject matter in that situation is a job, is a job application. The call to action, as Hart's representative talks about for the advertisement, is it's a job application. Please apply for this job. That is the call to action. So with regards to that subject, job applications, hiring, we could not say, well, then we can't, we allow everybody except religious organizations to talk about this subject. You know, viewpoint discrimination. But, but, the policy says advertisements that primarily promote, Judge Newsom's question to you, right, a religious faith or a religious organization. Does hiring promote a religious organization? Well, in this case, Your Honor. Here we're in your community, we're a religious group, a religious faith, we want to hire. Well, Your Honor, I think if we look at the language of the policy, it starts off with, you know, it has to be a commercial advertisement. It defines a commercial advertisement as an advertisement dealing with commercial speech, an expression that proposes a commercial transaction. Typically, it's a sale of goods or services, but it's a commercial transaction. So we're talking about a commercial transaction here where this entity is saying, apply. We need to hire people, come and apply. That is the commercial transaction that, that is the subject. Hanukkah on Ice is, in a way, a commercial transaction. It wasn't free. You had to pay for it, right? That is absolutely correct, Judge Jordan, and, and. So how do you get out from under that? Because, Your Honor, we are not arguing that the district court erred by finding that, as applied to Young Israel, there was viewpoint discrimination. We're not arguing that on appeal. We're, we're arguing two things here on appeal. Number one, that on its face, the policy is capable of reasonable application and is not, per se, unconstitutional. But more importantly, we're arguing that the, the district court injunction that permanently enjoins Hart from ever trying to follow the Supreme Court precedent is overbroad, and that should be vacated. And the reason we say that, for several reasons, but obviously, under this court's precedent and Rule 65. Okay, I'm sorry. I promise I'll let you talk about the injunction, but I just want to kind of keep us on track. Let's, let's keep talking about what I'll call the merits of the constitutional question, then we'll get to the injunction. But, all right, so you never really had an opportunity to answer my question about the word promote in the policy. This policy, it seems to me, on its face says no pro-religious speech, basically. So even if religious speech is a content, not a viewpoint, this policy itself, and the premise of the question is, is itself viewpoint discriminatory because it only prohibits one perspective about religious organizations, faiths and organizations, and that is pro, not anti. And, you know, there are other pieces of the policy, for instance, that carve out other exceptions, like that use more agnostic terms, containing, you know, containing profanity, containing nudity, containing discriminatory messages. But this one doesn't say containing religious messages or about religion. It says those that promote religious faith or organizations. Why, why doesn't that render a viewpoint discriminatory? Well, I think on its face, Your Honor, and I understand the question, it prohibits any advertisement that would promote a religious organization or religious belief. It doesn't say any advertisement that denigrates a religious organization or faith. Correct, Your Honor, but I believe that on its face and as it would be applied, any ad that primarily denigrates another religion or religious belief would not be a commercial advertisement. It would not meet the threshold to even be considered for this advertising policy on its face. So that's why I don't believe that just having the word primarily promotes a religion is problematic. And number two, with regards to... Was from an atheist organization. I'm sorry? What if the organization was Young Atheists of Tampa? I would still consider, if they were promoting that, consider that a religious organization. So it would still fall under the same category. And similarly, we wouldn't allow them to denigrate another religion, because again, that A wouldn't be commercial speech. So that would be why that primarily promotes language does not on its face make this viewpoint discrimination. We believe that this policy is capable of reasonable application based on the fact that you have the threshold of commercial speech and then a limitation at kind of buttressing the commercial speech aspect, which if you're primarily promoting or trying to denigrate another religion, you are not primarily having a commercial advertisement, which is what the threshold is for this advertising policy. Could the Young Israel advertisement have been handled better? Absolutely. But on its face, we believe that this policy is capable of reasonable application. And even if it isn't currently, then what the injunction does is it prohibits HART from ever trying to comply with Supreme Court precedent that says you can do this as long as you have objective, workable standards and guidelines that prohibit any arbitrary enforcement. So going back to my question, I'm sorry. No, no, you go ahead. Again, this hypothetical young atheist of Tampa wants to advertise an ice skating event at a period of time and they're charging admission to come and they're promoting atheism commercially. Is that allowed? I'm sorry, Judge Gruberg. I did not understand your question the first time you asked it. Yes, it would be allowed because HART does allow advertisements for ice skating events. So, yes, that would be allowed. Even though, wait, wait, wait. Now I'm, I thought I understood the argument, but now I'm confused. Because in the world of religion as viewpoint, something I'm not sure is quite right because I can't understand how there's one viewpoint to religion, but that's for another day. Atheism is outside of the religion box? No, Your Honor, I'm suggesting that because the content... You can't treat young Israel different than young atheists if both are quote-unquote religious organizations, right? That's correct, Your Honor. I'm not trying to. I'm sorry if I was not clear. I thought you said that the ad for young atheists of Tampa would be allowed. For the skating event. Yes. Yes, that the content of, as we've learned through this exercise, the content, the subject matter of skating events... If we had a picture, if that ad for young atheists had a picture of a cross with a circle and a line through it, the ad allowed or not allowed? I think based on the fact that Hart would allow currently any event, an ice skating event, I think based on all the case law, it would be viewpoint discrimination to say you cannot have an advertisement, a commercial advertisement for your ice skating event because you are a religious organization. And that's not what we're arguing here. We're not arguing that we were correct with regards to young Israel as the policy was applied to them. Okay. Let's assume you lose on the big issue, okay? The big merits issue. I have questions for you about the alternative ground, but let's say you lose on the big issue. What should the permanent injunction have said? The permanent injunction should say that we — that Hart is enjoined from enforcing this current policy. That is the issue that was in front of the district court. That is the issue that — that was what the language that we submitted to the district court, I believe, actually said, that this particular policy, and particularly Section 4e of Hart's advertising policy, is what would be enjoined. Now, what we're having... ...is a last clause of the relative language, which is, or in any future advertising policy, that Hart might adopt and implement. That's — that's your concern. Your concern, Your Honor. You don't have any — you don't have any issues with the first part. Well, Your Honor, we — Which says you cannot reject any advertisement on the ground that it primarily promotes a religious faith or religious organization, whether under Section 4e. So it would stop there. You don't have any problem with that? Well, Your Honor, I wouldn't say I have no problem with it because we believe that we should prevail on the merits. Well, you're asking — you're asking for it to be — for the injunction to be modified if you lose on the merits. Correct, Your Honor. So I'm asking you, what is the right wording for a permanent injunction if you lose on the merits? That — that's — then you're correct. We would take out the weather, and we would put a period after 2013. And so it would be that Hart is prohibited from rejecting any advertisement on the ground that the advertisement primarily promotes a religious faith or religious organization under Section 4e of its advertising policy, effective as of December 2nd, 2013. And the reason for that is that if we lose on the merits, then we believe that Hart should have the opportunity to comply with Supreme Court precedent. And — and someone smarter than me is going to figure out the guidelines and the objective workable standards to make sure that this never happens again and that the policy is consistently enforced and not viewpoint discriminatory. Hart should have that opportunity. I don't think — I don't think I understand that, though, because, I mean, if — if the — if the sin of the current policy is that it impermissibly rejects ads on the ground that it primarily promotes a religious faith, and we say, hey, that's unconstitutional, you can't do that, then what — I don't — I don't think I understand what the harm is of taking the injunction and enjoining this policy in 4e and likewise sort of rolling the precise — sort of the precise injunction forward to future policies that are in 4f. I don't think — I just don't think I understand that. So should the challenger have to just make these seriatim challenges every time you recategorize the same policy? No, Judge Newsom. I think our primary argument is that the sin isn't just not allowing religious speech. I think that every court case that we look at says, you know, Rosenberger in some dicta indicates that it might be too all-encompassing. But they all say that with appropriate safeguards, objective, workable standards, this can work. So the sin is not so much just religion. The sin in this case, if we were to lose on the merits, was that it's not reasonably applied, that there weren't safeguards, there weren't objective, workable standards for HARTS agents to look at an ad and say, no, that does not come in. Yes, this comes in. And that's all — with regards to the injunction, that's what we're looking for the opportunity to do. Well, that gets to the question that Judge Jordan, I think, was signaling to you that he'd like you to address. I'd like you to address it as well. I mean, like, sort of what are the safeguards here? I don't understand. And I mean, like, I'm not quite sure what — A, I'm not really sure what religion means. I'm not quite sure what primarily promote means. And the enforcement history here is almost embarrassing. The Book of Mormon example is really problematic for you, I think. So what are the safeguards? Tell us what the safeguards are. Well, I think it could be as simple as leaving it at commercial speech and going that route. But like I said, somebody smarter than me is probably going to come up with the objective, workable standards that will — Yes, I mean, not on a going-forward basis. This is like an independent ground on which you might lose this appeal. Right. The district court said, listen, even if that trilogy of Supreme Court cases doesn't mean that religion is always viewpoint for purposes of the First Amendment, you have to have a regulation whose enforcement is reasonable, predictable, not arbitrary. And the district court found the record in this case wanting. What did the district court get wrong about that? When the people who are in charge of the policy weren't really able to articulate any guidelines that provided any sort of predictability. Right. Thank you, Judge Jordan and Judge Newsom. There's kind of a two-fold answer to that. First, I would say that that is really kind of digging into the as-applied-to-young Israel. When you're talking about the testimony of Tyler Rowland and saying, you know, well, if we move the menorah, you know, that's problematic. And that's why we're not challenging the determination as-applied. On its face, we think that it is capable of reasonable application. And that's really turning into the argument with regards to the injunction, which is that — Well, hold on. I'm sorry. Before you go there, though, it's not just the, hey, maybe if you take the menorah out, this would be okay, and emphasize the ice skating. It's the testimony that says, like, well, I don't really know. It's kind of a judgment call. Like, you know, sort of one person sees this, and one person sees that. I mean, that is sort of, like, inherent in the policy itself. It's not really what happened to young Israel. It's like it's incapable of reasonable, consistent application because there are no guardrails. There's no — you know, there's no sort of decision tree at all. Right. Yeah. Judge Newsom, I don't disagree. That was a testimony, and it was too arbitrary the way that it was. What I'm suggesting is that if you just look at the actual policy itself, which limits it to commercial advertising, I think that would have been a much better safeguard for Hart at the time. But moving forward, all Hart is asking for at this point with regards to the injunction is to be able to monitor what's going on in the world and court cases and to determine what safeguards they can come up with. It's up to business owners that operate nonpublic forums to determine what safeguards, what objective workable standards work for them so that they comply with the First Amendment. And that's all Hart is asking for, is the opportunity in the future to possibly do that. I'm not saying that they're going to, but to possibly do that. But am I mistaken in reading Mansky as facial invalidity as opposed to as applied invalidity? I mean, the policy in the Supreme Court, in the opinion by Chief Justice Roberts, says Minnesota, your policy of not allowing political buttons, political garb, et cetera, near the polling booth, that's legitimate. That's a legitimate policy. We can understand why you don't want people when they're voting to have this sort of imagery and messages around them. But then it says, but you have to have a reasonable policy for figuring out what political means. And the whole thing goes down. So if you don't have safeguards, right, how do you craft an injunction? What does the injunction tell you to do? The injunction tells us that we cannot enforce our current policy, Judge Jordan, and that's sufficient. But that doesn't do anything for the lack of safeguards. Well, then we could. It could follow the language in the Atlanta Constitution case, which says that Hart cannot enforce this policy without appropriate safeguards. That's pretty much, I think that's verbatim, what this Court held in the Atlanta Constitution case. And that's what we're asking for. Basically, not saying that Hart can never, ever even try to comply with Supreme Court precedent that says, with appropriate safeguards, you can do this. But it doesn't say that. The injunction doesn't say that. The injunction says that you cannot, on the ground that the advertisement primarily promotes a religious faith or religious organization. It seems to me that that last clause is trying to prevent, and just fashion a practical remedy that avoids the organization from making immaterial changes to the policy to get around the injunction. Well, I think immaterial changes to the policy would certainly get Hart in hot water again. That's not what we're trying to do. All that the injunction says is that Hart, its agents, employees, and all those acting in concert with them are enjoined on a permanent basis from enforcing this policy or any future advertising policy that Hart might adopt and implement. And in Mansky, the problem was the lack of safeguards. And so if our problem is a lack of safeguards, then Hart should have the opportunity to talk, to discuss this as a board, as a business owner operating a non-public forum, to decide what are the objective workable safeguards that will work for our situation, our policy, and try and make this comply with the First Amendment. Maybe they never do. But as a government agency, they're asking for the opportunity to try and comply with the Supreme Court precedent that tells them that they can do this. I'm about 12 minutes over my time. You may have a little bit longer to go. So if you're right on the injunction aspect of your appeal but lose on the merits, what the district court should have said to you was you are permanently enjoined from applying policy number four, as it's currently written? Four E, Judge Jordan, specifically. Yes, that's what we're asking for. If it were just remanded back for further findings from the district court, and the district court finds that she wants to add without appropriate safeguards or the language from Atlanta Journal Constitution, then that would probably be fine. It's that we can never, ever even try to comply with Supreme Court precedent based on my reading of this injunction. Do you think this injunction as phrase bars you from deciding, as a general matter, that you are not going to allow any religious advertisements at all? I'm sorry, does this injunction bar us from having? Do you think that the injunction as written bars you from prohibiting religious advertisements in their entirety? Forever, yes. Even though the new policy that I just described is both pro-religion, anti-religion, neutral to religion. I'm sorry, which new policy? The one I just made up. You just hard decides, listen, this is too difficult. We're just getting in trouble all the time. It's not worth the money that we're getting from these ads. We are just going to bar religious advertisements, period, end of story, done. We don't care if they're good, bad, indifferent, pro, con, neutral, done. We're out of the game. Could you do that under this injunction? I don't believe so, Your Honor. I would like to think that we could, based on just the pure subject matter. But the way this injunction reads, no, I would certainly not advise Hart to try that. Because I believe that then we would be there and contend. And that's also part of the problem with this injunction. And we argue that it's vague, and that it's hard to tell exactly what we're prohibited from doing. But I would read this and say, no, you cannot just have a blanket ban on religious organizations or religious advertisements based on this injunction ever. One thing that suddenly strikes me as odd, and this is always risky thinking out loud, is that for the same reason that you contend that the injunction is vague, your policy is sort of standardless. Because all the injunction does is parrot the terminology of your policy, primarily promote a religious faith organization. The injunction literally writes it into the court order. And so to the extent that is vague, the policy is vague. And now we're right back into standardless discretion and parade permits land, like Judge Jordan was talking about. Right. Well, but the problem that we have with this injunction is not so much that the language is vague, that primarily promote a religious organization is vague. It's the extent of that injunction, that forever and ever and ever we cannot do anything that would prohibit a religious organization or religious advertisement. Let me ask you this. What about if the injunction said, and now I've turned the page so I don't have it in front of me, but what about if the injunction said, if instead of referring to Section 4E, if it just said, you're permanently enjoined from rejecting any advertisement on the ground that the advertisement primarily promotes a religious faith organization, period. Doesn't refer to 4E or any future policy. Then I think that we would have to then look at this policy and look at the injunction and figure out if we can then work safeguards in. And basically, we would, to make it comply with all of the Supreme Court precedent that says that we can restrict as a content religion, we just need to figure out what those safeguards are to make sure that we don't run afoul of Mansky or any of the cases that say that there aren't reasonable safeguards in place. All right. We've taken you way over your time, but you've saved your three minutes for rebuttal. Thank you. Mr. Hahn. Good morning, Your Honors. May it please the Court. William Hahn for Young Israel of Tampa. I think it'd be helpful to begin with the double barrel problem that Judge Newsom referenced, because it gets to why both the merits and the injunction are before this Court and how the two are linked. The injunction, as has been pointed out, prohibits Hart from doing exactly pure viewpoint discrimination, denying ads on the ground that they primarily promote a religious faith organization. Hart agreed to that language, and it's not an abuse of discretion to prevent Hart from engaging in clear-cut religious viewpoints. But it didn't agree to all of the language, right? Correct, Your Honor. But it agreed to the denying ads on the ground that they primarily promote a religious faith organization. Right. He just explained that the concern is with the latter clause, not with the initial preamble about prohibiting Hart from refusing or prohibiting advertisements that promote a religious faith or a religious organization. As I understand Hart's position, their concern is about the temporal scope of the injunction. And does it just apply to the 2013 policy, or does it apply going forward? And as the district court explained when entering the order, injunctions in constitutional cases, especially in First Amendment cases, have to prevent recurrence of the like harm going forward. That's what this injunction did. But to the double-barreled problem, there's a deep connection here between the injunction and the merits. You heard my friend on the other side say five times that the reason why they want to get out from underneath this injunction is to do what they say the Supreme Court allows them to do, which would be to craft a broad religious content ban on the claim that that's not religious viewpoint discrimination. It may not be. Well, the problem is at page 832 of Rosenberger, the court says very clearly, describing the holding of Lamb's Chapel, discrimination on the base against religious speech was, is discrimination on the basis of viewpoint. Can I ask a question about that? Can that be right? I mean, can that really be right? Do you read the trilogy of cases, and in particular Rosenberger, to mean that there is a single overarching religious viewpoint through which people sort of assess the world, or that religion is a collection of more sect-specific viewpoints? Both of those just seem to like sort of dredge up these horrible line-drawing problems to me. Like, what is exactly, what is it? I mean, I hate to say it, but in some ways, the question presented here feels like, quote, what is religion, close quote. Well, I take the point that the theoretical distinction between religion as content and religion as viewpoint is, as the Supreme Court said, an imprecise one to draw, but I think the Hart's own briefing explains why the court has taken what three other circuits have called a broad view toward viewpoint discrimination. If you look at page 31, I think Judge Jordan you referenced the Book of Mormon example, Hart claims, hey, we could allow speech about the Book of Mormon if you're advertising the play. That would be fine, but we won't allow speech about the Book of Mormon if you want to promote worship, because that would be religious. They call that acceptable content discrimination. That's clear-cut viewpoint discrimination, and the Supreme Court's- But that's because of the policy in this case. That's how they understand, that's when they're explaining freethought, Your Honor, and what the difference between content- No, but we're not bound by what a party thinks about a trilogy of cases. Sure. We're just talking in the abstract here about whether the notion, I think I share Judge Newsom's concern that as a theoretical doctrinal matter, saying that all religious regulations, our viewpoint from the get-go has really very small footing it completely eliminates the distinction between content and viewpoint in the world of religion. If this court were to take that view, which it doesn't have to, to affirm the injunction, but if the court were to take that view, it would be agreeing with WMATA, the Archdiocese of Washington versus WMATA case in the D.C. Circuit. That was the exact argument made by the D.C. Circuit resurrecting what we see as resurrecting Justice Souter's dissent from Rosenberger, which is essentially that so long as you craft a broad ban on content, you've not engaged in religious viewpoint discrimination. The problem is, is that Rosenberger, Lambs Chaplain, Good News Club all reject that and multiple other circuits acknowledge that that's the right way to read them. Free thought, most obviously from the Third Circuit, but also the Swiss Circuit. With a dissent. Yeah, I'm sorry, Judge. Free thought with a dissent. With a dissent, that's true, but also. It's just hard. It is hard, but the fact that it's hard is why the broad line is wise. Because we're talking about speech that's doubly protected by the First Amendment. So allowing governments to experiment. What do you mean it's doubly protected by, oh, you mean the free speech and the free exercise. Absolutely. This is not a free exercise case. Well, the free exercise claim is part of the record, but we don't need to get into it to affirm. But the point is, we're talking about religious speech, and so we should be asking the question, are we going to allow governments to experiment with this infinitesimally small daylight between religious content and religious viewpoint, or are we going to take a broad view? Free thought, the Sixth Circuit's smart decision, the Tenth Circuit in Sunim, the Second Circuit in Byrne, all these cases are mentioned either in free thought or in the course of our briefing. They all claim the Supreme Court took a broad view. Justice Alito, for four justices in Metalsa, the same thing, citing Rosenberger. Can I ask you just a quick question about sort of back to the most foundational question sort of about how it is that we decide whether something is religious speech? So if free thought says that atheist speech is religious speech, now I have completely lost the thread on what constitutes religion, right? I mean, my first thought was, you know, is it sort of like part and parcel of religion for there to be a supreme being? Free thought would certainly say no. Deism of any kind, no. An afterlife, I don't know. At what point, for instance, are the Buddhists out? Because there is no God figure. This is my question, like how is it that we decide like what even comprises this category of religious speech? Well, I think the way the Supreme Court has addressed that in the trilogy has been to focus on, as they say in footnote four of Good News Club, the substance of the activities issue, not get into labeling what's what, but look at the substance of what the group wants to speak about. So the first question you'd ask is, what is the topic the speaker wants to address in the forum? And then the second question would be, is that topic a topic that's discussable in the forum? And so then the third question would be, are you being excluded from the discussing that topic because of a religious perspective? And in every one- That's where I get kind of hung up. Like how do we decide what a religious perspective is? Well, the government admits in every one of those cases, and then also in our case here, that we denied you because of religion. And the injunction would do the same thing. It says Hart's denying the ad on the ground that it primarily promotes religion. So the government will tell you that they're denying the ground because it's religious. Anybody can, I don't mean this in a facetious way, but anybody can say that a belief is religious in nature. And once you walk in that door and courts can't question the validity of that religious belief, the world of religion gets expanded greatly. For purposes of viewpoint discrimination. So I walk out of here today and I decide, this is the church of Bert Jordan. And I believe one, two, and three. And I go to Hart and I say, I want to put up an ad. And they deny me and I say, that's a problem because I'm a religion. What is Hart's response to that? Well, I think they're like- They have to sit back and say, yeah, that's your religion, yep. You're part of the universe. It's viewpoint, we can't do anything about it. Well, the last piece that you mentioned, Judge Jordan, is why for religious viewpoint discrimination, the issue isn't I think I'm religious or the church thinks it's religious or the organization, whomever, thinks it's religious. The question is, why did Hart or why did the government deny the ad? That's why the on the ground language that we agreed to is language that comes from the Supreme Court opinions on the ground. What was the reason the government gave for denying the ad? Not what you think about yourself, but what- Let's get back to this case. So, if you have a religiously based advertisement that on the one hand promotes a religious faith or viewpoint or organization, and at the same time denigrates another, where are you? If you have a religious ad that promotes a religious faith- At the expense of another. The question would be, again, both under the injunction and then ultimately under the Constitution- No, no, forget the injunction now. This is just merits? The merits. What do you do with that sort of a policy? Right, the question under the Constitution would be, okay, what's the topic the speaker wants to address? Is that topic allowed to be discussed? The topic is holy war. The topic is holy war. Holy war is not a topic- The holy war that we wage is righteous and correct and in the name of our deity. Okay. The holy war that is being waged by religions A, B, and C is an affront to everything that we know about our deity and the way the world is supposed to be run and all of this and that, and contains even more critical language. So, join us. Get away from them. What do you do with that advertisement? I think HART could deny it invoking one of its other prohibitions because it doesn't sound like it's a topic that's discussable within the forum and so it wouldn't have to make any reference to religion at all. HART, for example- Come to our speaker series, $10 a person. $5 if paid more than a week in advance. Commercial transaction. The fact that it's commercial doesn't change that there are other prohibitions in the HART policy that allows them to deny the ad. What would deny this one? On the holy war one? Yeah. Okay, well, let's see. There's a prohibition on promoting illegal behavior, on promoting violence, on promoting access. They're not promoting the holy war. They're just saying ours is the righteous one. Theirs is the bad one. They're not telling anybody to get involved. They're just saying we're proselytizing the right religious message. They're not. You could also deny ads on the ground that they demean or disparage a particular group or that they're discriminatory. Even though it's religious in nature. So you can't have religious disparagement. You can bar religious promotion. You can't bar religious promotion, but you can bar religious disparagement. I think that the critical point there, Your Honor, is that HART wouldn't be denying these ads on the grounds that they are religious. They would be denying ads on the ground that they violate some other provision of the policy. So you can't have any religious prohibition. I don't see how you can have, under the trilogy, I don't see it. Now the injunction. So unlike politics, which can be, at least right now, completely banned from public transit vehicles under laymen, you can't do the same with religion. Right, politics is different because politics, and Manske makes this point in the course of being very clear that it is not invalidating the electoral campaigning and advocacy-related restrictions about speech in polling places. Politics can be more narrowly defined to be a restriction that you could always have in place, usually related to electoral advocacy. The Smart case from the Sixth Circuit draws the same distinction. The problem with religion, and it's articulated in Rosenberger, or rather the distinction with religion, is that religion is both a broad worldview from which a variety of subjects can be addressed, and then also a perspective by which you could address economic questions, social questions, political questions, cultural questions. How does that distinguish religion, and I hate to be that guy, but I just like keep going back to this, sort of like the kernel of the problem, at least in my mind. How does that distinguish religion from ordinary philosophy? I mean, isn't philosophy likewise a topic and sort of a perspective, a premise through which you might view the world? I just don't see how we go about drawing that line. Well, it may be the case that there are other subjects that are of that type as religion, but there are also, as Freethought points out, subjects that aren't that way. And the example Freethought uses is abortion. You're probably not going to be able to discuss an entire panoply of perspectives just from the topic of abortion. So the heart can have topics that it can restrict that would make religious speech less likely. So for example, if heart had a pure commercial versus non-commercial speech ban, and then maybe it layered on top of that some speaker distinctions, like you need to be in Hillsborough County if you want to run an ad on our system, or we're only going to allow ads from for-profit speakers and not non-profit speakers, or we're going to have all of that, and then we're also going to say, you can't address a topic that's covered by the protected categories of anti-discrimination law. All of those things would probably be fine, and they certainly wouldn't raise a religious viewpoint discrimination problem. It'd raise all sorts of other problems. It might, Your Honor. It's not a mess. Well, I'm not sure. The commercial versus non-commercial distinction is a viable one to draw if you're in a non-public forum, and the question is reasonableness. And so the question, the one thing that the First Amendment always takes off the table is just saying, look, you can discuss this topic, that's fine, but we're excluding you because you're religious. That's the one option that's not available to heart, and yet five times they said that's the one option they want open to them. That's why entering this injunction was not an abuse of discretion, and that's why it's essential to also explain, as the district court did on the merits, that the trilogy says, to quote Rosenberger, discrimination against religious speech is discrimination on the basis of viewpoint. A so-called narrower ruling would just embrace WMATA and enter, Judge Newsom, frankly, more doctrinal bloat into the First Amendment where we're gonna let governments experiment with this metaphysical distinction between religious content and viewpoint. The broad view is the constitutionally sound view. Can I ask you a quick question? So given the fact that there is, at least in my mind, maybe as a matter of first principles, not so much under Supreme Court case law as it exists, right, I take the trilogy, and I take Rosenberger for what it says at face value, but why is it that all of these cases end up getting litigated as free speech cases instead of primarily free exercise cases? Because what you just said, the one thing the government can't say is it's all good, but because it's religious, we're rejecting it. I think that's like right out of Scalia right in a free exercise case. So why is it, like, isn't the free exercise clause the solution to, like, all of these, like, horrible line-drawing problems between religion and philosophy or whatever on the free speech side? Well, Justice Scalia did mention in his Good News Club concurrence that because it's religious is not a reason to exclude speech from the forum, and he cites Lukumi for that purpose. There are important differences between how a free exercise claim and a free speech claim might play out when it comes to neutrality and whether you assess motive, things like that, but these cases, you don't have to reach any of those difficult questions because all you'd have to say is the injunction's not an abuse of discretion because this is clear-cut viewpoint discrimination, and the district court was right on the merits because Freethought and all the other circuits acknowledge that a broad religious ban, the broad ban on religious content is still going to result in religious viewpoint discrimination. If we agree with you and with the district court, why shouldn't we affirm on the most narrow ground, and that is the Manski ground? Normally, law students, lawyers, judges are taught that you do the least harm that you possibly can when government and the democratic process is involved and you do things, generally speaking, not always, but generally speaking, incrementally, so what is the harm in saying this policy fails under Manski and asking the district court to revise the injunction for a Manski violation? What's the harm in doing that? There are a few harms. One would be, as I think is implicit in your question, Judge Jordan, the injunction is premised on a finding of viewpoint discrimination, so we would be saying that even if the- All right, of course, but I'm flipping everything on you and I'm telling you that the violation, I'm assuming that the violation is the Manski violation. You defend that, too. Oh, the policy is standardless, for sure, but- So why not affirm on that ground? Because the problem is that you set it up as a narrow ruling. It would not actually be narrow, because what it would do is it would say that it is possible, at least theoretically, to come up with standards by which you could reasonably ban religious content and not have religious viewpoint discrimination. Is that so? And that is the view of the D.C. Circuit, so you would be accepting the view of the D.C. Circuit with regard to how the trilogy- Your position is you can't have any policy that bars religious speech on its face. Our position is that HART has a lot of different tools to manage its forum to make religious speech unlikely. I know, that makes it an easier case for you, but I'm asking you a more abstract question. Your view is that no policy, like HART's, can prohibit religious speech. Yes, because HART- End of story. If a government is starting from the perspective, hey, I'd like to restrict as much religious speech as possible, you're probably starting off on the wrong foot and going to invite a First Amendment problem. Everything invites a challenge of one kind or another. Was it that Tocqueville said that in one of the incredible things he saw about America is that every big social, cultural problem ends up in the courts, right? So I take the point, but you're basically saying that there is no way that- Put HART aside. There's no way that any government entity could draw up a constitutional advertising policy that precludes religious advertisements. Under the trilogy, I don't see it. Can I ask you one more blocking and tackling question just about, I think you said something earlier in response to all of my pestering you about sort of trying to draw a line around religion that sort of distinguishes it from philosophy or whatever. You said some version of, and tell me if I'm not trying to put words in your mouth, I'm just trying to follow. You said some version of, like, don't worry because the government's going to tell you what it's doing, right? Like the government did here, no religious speech. Does that mean that we just take the government at its word and that in fact, there is no objective, sort of objectively demonstrable, verifiable meaning to what religion sort of encompasses, like in the case law. You just take the government at its sort of, its statement at face value. So if somebody comes in to HART and says, look, I read Atlas Shrugged. Objectivism is my religion. I want to, or no, no, no, it doesn't even say that. Just says, I read Atlas Shrugged. I want to put an ad for objectivism up on the bus and the government says, no, because we have this policy against religious speech. Do we just say violation, viewpoint discrimination against religious speech and accept the government's, its own assessment that Randian objectivism is in fact religion? Is that how it works or do we have, would we assess like, well, I don't know, like is Randian objectivism really a religion or not? Well, I think under the cases, what we see is that, like, as I said, the government tells you, but in terms of second guessing the reason that the government tells you, I think it would depend upon what kind of decision we're talking about. If we're talking about a decision where maybe, I think what's more likely to happen is that the government would say some other reason and then the plaintiff says, actually that's really religion. Yeah, I'm just asking like, what if they did say? And you, and then the court would want to say, well, that's not really a religion. Yeah, is that what would happen? Well, I think perhaps the safer way would just be to say, government, you had other grounds on which to deny this ad. There were other policy prohibitions. So for example, like Hart in district court when we were arguing about the injunction made the kind of fanciful suggestion that a strip club might want to advertise and put rosary beads in the ad. Well, Hart would have a basis to deny that ad that has nothing to do with the rosary beads and that would be fine. And that would speak, not speak to religion at all. And the plaintiff could even come back and say, but my stripping requires rosary beads. And it's like, well, here's the thing though. We have a policy that prohibits ads promoting nudity in adult themes. Like that's not a religious based reason. Now that said, if let's say Hart wanted to, the Hart board, not like the advertising contractor, the decision tree on specific ads, but let's say the Hart board wanted to say, let's sit down and come up with, you know, the eight different ways from Sunday that we can make it really hard for religious people to speak. Maybe in that kind of situation, you might get into motive. But as you explained, Judge Newsom, in that choice, I mean, if the result is a content neutral, viewpoint neutral legislation, or in that case it'd be a policy, we don't normally assess motive. Could Hart ban as a category any advertisements dealing with public events? Any advertisements dealing with public events? Yep. As a category. And then ban Young Israel and his Chanukah on Ice advertisement. Yes, it would be under the injunction, it would be denying them on the ground that it's a public event. And they have a policy that bans public events. It wouldn't be referencing religion at all. Now, again, I mean, on the issues of, like, unbridled discretion, there might be questions about, you know, well, we allowed the ad for Winter Village, we allowed the ad for the Gasparilla Arts Festival, we allowed the ad for the Jacksonville Music Festival. That's a different story. Right, that is a different story. That's uneven enforcement. Right. I'm saying a new policy. But in terms of a new policy, if they wanted to ban ads on public events, I think that that would be fine. You're really encouraging, in the long run, governments to get really creative and draw up so many categories that if they really want to snuff out religion or religious advertisements, they'll do it by creating so many other categories that there's no breathing space left. Well, I think if governments are operating from the standpoint of, let's restrict as much religious speech as possible, they're inviting all sets of problems. So I'm not sure that they would approach things from that perspective. My background assumption is that HART's trying to run a good, well-functioning transit system and they want a safe, comfortable environment. So I don't think they're gonna be approaching things from that perspective. I think their attitude is, let's figure out how we can, and even if you look at the evolution of the policy that they point out between 2008 and 2013, the goal, as their general counsel said, was let's try to maintain the amount of ads that we've generally had. Let's try to not change the overall mix of advertisers that we have, because we've got a good thing going. So I think HART's perspective would be, how can we have a safe, well-functioning transit system? And there are lots of tools in its toolkit to reach that result without doing the one thing the First Amendment says you can't do, which is exclude religious speakers on an otherwise discussable topic because it's religious. Can I, I keep saying one more, but can I ask you one more? I was about to say, I promise, but I don't promise. I'm on your time, Jason. So what work, if any, does the word promote in the policy do with respect to viewpoint discrimination? Like, is it truly a double-barreled thing? I recognize, of course, that your sort of lead argument with respect to viewpoint discrimination is, and perhaps appropriately so, is the trilogy in Rosenberger, right? But even if we say, well, you know, so maybe religion might, in some sense, be content instead of viewpoint, what work does the word promote before religion do in the policy? I mean, because as I read it, there are other pieces of the policy that use language like contain, and this doesn't say about religion. It says that promotes a religious faith organization. Does that sort of add anything to your viewpoint argument? I think it makes the viewpoint problem with the policy all the more explicit, like the SMART decision from the Sixth Circuit, when it's explaining, before it gets to how Rosenberger takes the broad view on viewpoint discrimination. You're talking about SMART 1 or SMART 2? The 2020 decision. SMART 2, okay. It explains, before that happened, before it gets into Rosenberger and the broad view, it explains how, look, four against prohibitions is exactly, like, that is viewpoint discrimination. Clear cut. You allow four, you don't allow against. You allow against, you don't allow for. It's important, I think, in telling here that Hart didn't understand this policy to be just about promote. The denial that Young Israel got, for example, was phrased as Hart doesn't allow religion affiliation advertising, just as it doesn't allow ads for, you know, all sorts of vices. That shows you, and again, even the presentation from my friend on the other side today, five times, we want to go back and do what the Supreme Court lets us do. So it goes to show the wisdom of taking the broader approach which is that, as a practical matter, governments understand this to mean, oh, okay, we can just go after religion as opposed to parsing the fine promote oppose. Got it. Okay, thank you very much. All right, thank you very much. Thank you for your time. Thank you. I would normally promise to be brief, but I'm not going to make that promise right now. I will try, though. Starting with religion, we might as well go there. All of those cases also say, first of all, you think about what the actual elements and the facts were in those cases. You're talking about University of Virginia and schools and community centers that opened up their forums to a vast array of topics. Talking about for the University of Virginia, it was any topic regarding education of the University of Virginia experience, including opinions. It was incredibly broad, which is why the court found that that was viewpoint discrimination. If the true holding of the trilogy was that you could not ban religion as a subject matter at all, we're done. They don't have to go through the details of, well, they allowed this particular organization to come and talk about child rearing and how it's from their perspective. Now you have to allow a religious organization to talk about it from their perspective. In fairness, though, I do feel like you are sort of channeling Justice Souter's dissent and Rosenberger, right? Where he says, okay, it now appears to me that the court has collapsed the distinction between content and viewpoint with respect to religion. Because the policy there said, use some agnostic term like about or something, right? And he lost, right? And then he lost again in good news. So, I mean, it does seem like you're trying to sort of like harness the power of Justice, no one loves Justice Souter like I do. But you are trying to sort of harness Justice Souter when it's a dissenting position. I understand Judge Souter is certainly smarter than I am. So it's not a bad guy to strap yourself to. But at the end of the day, I don't think the holdings of those cases was that religion cannot be considered a subject matter. Again, they go into detail about why it is viewpoint discrimination. I think you're right. And I'm sympathetic to your perspective. But I think you're right that the holdings of those cases, when you figure out doctrinally what the court did with a set of facts, doesn't create a religion is always viewpoint principle. But if you look at the language combined with the holdings, that's where you start running into some problems. I understand, but we're talking about what the actual holdings of the Supreme Court were in those cases. And if they're actual holdings, and if the Supreme Court actually wants to go there, then they will say it. They will say, look, I guess we weren't clear enough in Rosenberger. Religion cannot be touched. They didn't say that. They never said that. They've always said that it's viewpoint discrimination if you don't allow a religious organization to put their perspective on otherwise allowable topics. They don't say that religion is a topic that always has to be allowed. And my three minutes are up unless you guys have any more questions. Well, I do ask, I mean, going back to the policy here, isn't this viewpoint discrimination because it's prohibiting the promotion of religion? Well, I think if you read the policy in its entirety, no, and there's a provision in the policy in addition to the commercial speech aspect, but that prohibits any kind of degradation of another organization. So I wasn't there when it was drafted, but one can surmise that the promotes is one side and there's also the anti-degradation. So it's not viewpoint in that this policy, this says that you cannot promote. So we're gonna allow somebody to come in and degradate a religious organization. So you're sort of piecing different aspects of the policy together. You're sort of using this piece over here to save this piece over here. I mean, to Judge Grimberg's question, which was the question I guess I asked at the outset, if we're looking at this provision, it definitely says promote. And I mean, I guess just from your perspective as Hart's lawyer, I guess promote could mean sort of just advertise, right? I mean, like in the way that a company promotes its products but it also, I think more likely means advocate or something like that here. So you don't deny that promote in that provision means advocate for, it's just that you say that there's this provision over here that says, but you also can't denigrate. I don't deny that promote can certainly mean advocate for a specific religion or religious organization. And then the counterside of that is that we also have a provision that says you can't degradate such an organization. Gotcha. All right. Thank you all very much. It's been very helpful. Thank you, Your Honor. Thank you. We're in recess until tomorrow.